STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**
**September 23, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **A.W., S.R., A.H., B.H., I.H., and E.C.**

**No. 20-0153** (Kanawha County 19-JA-164, 19-JA-165, 19-JA-166, 19-JA-167, 19-JA-168, and 19-JA-346)

## MEMORANDUM DECISION

Petitioner Mother N.H., by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's January 13, 2020, order terminating her parental rights to A.W., S.R., A.H., B.H., I.H., and E.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Joseph H. Spano Jr., filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without granting her an improvement period or considering less-restrictive dispositional alternatives.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner had been investigated for medical neglect multiple times. According to the petition, B.H. had an open wound that required surgery, yet petitioner failed to obtain the necessary medical treatment. The petition also alleged that petitioner failed to meet B.H.'s needs, as the child was malnourished and suffered from severe cerebral palsy. The child was reportedly in constant pain for which he was prescribed pain medication. However, the DHHR alleged that petitioner called the doctor and informed them that the medicine "flew out of her purse on the way home" and that she needed to

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

obtain a new prescription. During the DHHR's investigation, the child's medical providers indicated that petitioner often failed to bring B.H. to important medical appointments. One provider listed at least five missed appointments, including a surgery scheduled for February of 2019, and expressed the opinion that petitioner's conduct constituted medical neglect because of the detrimental effect to the child's overall health. The children's pediatrician indicated that petitioner failed to keep necessary appointments for the rest of the children as well. Following the petition's filing, the circuit court ratified the children's emergency removal.

In April of 2019, the DHHR presented evidence at the adjudicatory hearing that was consistent with the allegations in the petition. Based on this evidence, the circuit court found that petitioner abused and neglected the children. Thereafter, the DHHR amended the petition to include child E.C., who was born during the proceedings and tested positive for methamphetamine. Petitioner also tested positive for methamphetamine and admitted to abusing the drug two days prior to E.C.'s birth. The amended petition further alleged that petitioner had ceased complying with services following the child's birth.[2] Petitioner then waived her hearing on the amended petition and later stipulated to the substance abuse allegations against her at a second adjudicatory hearing. After accepting the stipulation, the circuit court adjudicated petitioner as an abusing and neglecting parent in regard to the amended petition.

In November of 2019, petitioner filed a motion for a post-adjudicatory improvement period. Thereafter, the circuit court held a dispositional hearing in January of 2020, during which the circuit court denied petitioner's motion. According to the record, petitioner admitted to continued drug abuse and testified that she would test positive for methamphetamine. Further, although petitioner attempted substance abuse treatment, she was discharged as a result of her noncompliance. The evidence established that petitioner did not have an appropriate home for the children and lived in a home "with a person [she] refused to provide the name of to the [c]ourt." Further, the record shows that petitioner believed she could appropriately parent the children and that removal from her home was unnecessary. Because of petitioner's refusal to accept responsibility for her actions or otherwise meaningfully participate in services, the court found that petitioner had no motivation to regain custody of the children and that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect in the near future. The court also found that termination of petitioner's parental rights was in the children's best interests. As such, the court terminated petitioner's parental rights.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

---

[2]The DHHR later filed a second amended petition in relation to an individual who is not a party to this appeal.

[3]The fathers of A.W. and S.R. were dismissed from the proceedings and the permanency plan for those children is to remain in their father's care. E.C.'s father's parental rights were terminated and the permanency plan for that child is adoption in the current foster home. The fathers of A.H., B.H., and I.H. currently retain their parental rights, although respondents indicate that the proceedings in regard to them are ongoing.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period. According to petitioner, she established some compliance with the services offered and deserved an opportunity to show the court she could remedy the conditions of abuse and neglect. We find, however, that the record does not support petitioner's assertion that she complied during the proceedings below.

At the outset, we reiterate that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). Further, we have held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004). Contrary to petitioner's assertion that her limited compliance with services established that she was likely to fully comply with an improvement period, we note that the record establishes that petitioner admitted to continued substance abuse at the dispositional hearing and was discharged from her treatment program for noncompliance. Even more important is the fact that petitioner failed to acknowledge the conditions of abuse and neglect at issue. According to the circuit court, petitioner expressed her belief at disposition that she could appropriately parent her children and that their removal from her home was unnecessary. As this Court has long held,

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Based on petitioner's failure to accept responsibility for the issues that necessitated the children's removal, an improvement period would have been futile. As such, we find no error in the circuit court's denial of petitioner's motion.

Further, the record shows that there was substantial evidence to support the circuit court's termination of petitioner's parental rights. On appeal, petitioner argues that termination was inappropriate because all of the children are placed with their fathers or in a relative's home. Accordingly, petitioner argues that permanency could have been achieved without terminating her parental rights. In regard to the children who have been returned to the custody of their fathers, we find that this argument does not entitle petitioner to relief, as this Court has held that "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). The assertion that a parent could avoid termination of their parental rights because the child is placed with a relative is similarly unavailing. Here, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the children's welfare required termination. Petitioner does not challenge these findings on appeal. Because West Virginia Code § 49-4-604(c)(6) permits the termination of parental rights upon such findings, it is clear that petitioner is entitled to no relief. Further, as this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

Lastly, because the proceedings regarding some of the children's fathers and the children's permanent placement are ongoing, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires that

> [a]t least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 13, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: September 23, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison